Argued June 19, affirmed August 8, reconsideration allowed
December 4, 1978

# CLINTON HAROLD RITCHIE, *Petitioner,*

*v.*

# BOARD OF PAROLE, *Respondent.*

## (No. 137-P, CA 10194)

583 P2d 1

James E. Mountain, Jr., Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Petitioner seeks reversal of a final order of the Board of Parole revoking his parole. ORS 144.335.

On November 9, 1977, petitioner's parole officer filed a violation report alleging that petitioner had admitted to the commission of new offenses, the use of narcotics, and the consumption of intoxicants. These allegations were based on his statements to police and the parole officer prior to or on the same day that trial counsel was appointed to represent petitioner on the new criminal charges of burglary and unauthorized use of a motor vehicle.

On November 14, 1977, petitioner's parole was suspended and a preliminary interview was conducted. Petitioner was given a notice of violation and notice of his right to a formal hearing. He requested the Parole Board to appoint an attorney for him on the ground that he could not speak effectively on his own behalf.

On November 17, 1977, petitioner appeared in Douglas County Circuit Court with his court-appointed attorney. He entered a plea of guilty to the charge of unauthorized use of a motor vehicle. On November 18, 1977, the Board of Parole hearings officer denied the request for a Board appointed attorney to represent him at the parole revocation hearing.

A formal revocation hearing was conducted on November 29, 1977. Petitioner stated that at the time of the alleged unauthorized use of a motorcycle he was highly intoxicated, having consumed a bottle of rum. He admitted he had a drinking problem but stated that he had gone to Alcoholics Anonymous and was trying to straighten himself out because he planned to marry. He expressed his hope that he would be sentenced, on the unauthorized use charge, to a drug and alcohol treatment program. Finally, he explained why he was unemployed.

[ 713 ]

The hearings officer found that petitioner's case "produced no unusual aggravating or mitigating circumstances." He recommended revocation of parole. The findings and recommendations were adopted by the Board of Parole, and parole was revoked on December 12, 1977.

Petitioner argues, first, that denial of appointed counsel was an abuse of discretion under ORS 144.343(3)(f) and OAR 254-70-015(6)(c), which provide a qualified right to counsel in parole revocation proceedings,[1] and, second, that provision for an abso-

---

[1] ORS 144.343 provides in pertinent part:

"* * * * *

"(3) Within a reasonable time prior to the hearing, the board or its designated representative shall provide the parolee with written notice which shall contain the following information:

"* * * * *

"(f) The parolee's right to be represented by counsel and, if indigent, to have counsel appointed at state expense if the board or its designated representative determines, after request, that the request is based on a timely and colorable claim that:

"(A) The parolee has not committed the alleged violation of the conditions upon which he is at liberty; or

"(B) Even if the violation is a matter of public record or is uncontested, there are substantial reasons which justify or mitigate the violation and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present; or

"(C) The parolee, in doubtful cases, appears to be incapable of speaking effectively for himself.

"(4) At the hearing the parolee shall have the right:

"* * * * *

"(d) To be represented by counsel and, if indigent, to have counsel provided at state expense if the request and determination provided in paragraph (f) of subsection (3) of this section have been made. If an indigent's request is refused, the grounds for the refusal shall be succinctly stated in the record."

OAR 254-70-015 provides:

"Within a reasonable time before a hearing which may result in the revocation of active parole status, the parolee shall be interviewed and receive a notice containing the following information:

"* * * * *

"(6) The parolee's right to be represented by counsel; and, if indigent, to have counsel appointed at state expense if the Board or its

lute right to retained counsel, but only a qualified right to appointed counsel, violates the Equal Protection Clause of the Fourteenth Amendment and Article I, section 20 of the Oregon Constitution.

The Oregon statutes which enunciate a parolee's right to appointed counsel were apparently enacted in an attempt to codify the requirements outlined in the United States Supreme Court opinion in *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973). In language that is incorporated almost verbatim[2] in ORS 144.343 and OAR 254-70-015, the court in *Gagnon* stated:

> "* * * Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that even if the violation is a matter of public record or is uncontested, there are *substantial reasons* which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. In passing on a request for the appointment of counsel, the responsible agency also should consider, *especially in doubtful cases,* whether the probationer appears to be capable of speak-

designated representative determines, after request, that the request has merit in view of the total situation, and it is claimed that:

"(a) the parolee has not committed the alleged violation of parole conditions; or

"(b) even if the violation is a matter of public record or is uncontested, there are substantial and complex reasons which make revocation inappropriate; or

"(c) the parolee, in doubtful cases, appears to be incapable of speaking effectively for himself."

[2] ORS 144.343(3)(f) and OAR 254-70-015(6)(c) apparently provide for the appointment of counsel even though the violations are admitted and there are no substantial, complex mitigating factors if the parolee appears incapable of effectively speaking for himself. The United States Supreme Court, on the other hand, viewed the parolee's ability to effectively speak for himself only as a factor to be considered in passing upon a request for counsel in cases where it is not clear if the issues concerning mitigation are or are not complex.

ing effectively for himself. * * *" 411 US at 790. (Emphasis supplied.)

The *Gagnon* requirements and Oregon statutes allow discretion in the first instance to the hearings officer whether to grant an indigent parolee's request for appointed counsel. As the court noted in *Gagnon*:

"* * * We think, rather, that the decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees.

"It is neither possible nor prudent to attempt to formulate a precise and detailed set of guidelines to be followed in determining when the providing of counsel is necessary to meet the applicable due process requirements. The facts and circumstances in preliminary and final hearings are susceptible of almost infinite variation, and a considerable discretion must be allowed the responsible agency in making the decision. * * *" 411 US at 790.

■ ■ The Oregon statutes were especially tailored to allow the state authority charged with administering the parole system discretion in making a case-by-case analysis of an indigent's need for appointed counsel. The question, therefore, is whether the hearings officer and the Board abused that discretion in denying the request for counsel. There was no question but that the parolee did violate the conditions of his parole and was therefore subject to revocation. There were certainly no complex issues or substantial mitigating factors to be presented. It is true that ORS 144.343(3)(f) and OAR 254-70-015(6)(c) provide for the appointment of counsel where the parolee appears incapable of speaking effectively for himself, even though the parole violations may be admitted and

there are no complex mitigating circumstances or other factors to be presented. Nevertheless, in evaluating a parolee's claim that he cannot *effectively* speak for himself, the hearings officer and Parole Board must necessarily consider the issues involved. Petitioner asserted in his request for counsel that he was unable to speak effectively for himself, but he offered no support for that contention. The issues were simple. He was able to relate what he felt were the mitigating factors and to express his desire to be placed in an alcohol and drug rehabilitation program. Under the circumstances we find no abuse of discretion nor fundamental unfairness in the denial of the request.

■■■ Petitioner's second argument is that the statutes and rules granting an unqualified right to retained counsel in a revocation hearing, but only a qualified right to appointed counsel, violate the Equal Protection Clause of the Fourteenth Amendment and Article I, section 20 of the Oregon Constitution. Under the Equal Protection Clause, unless the legislative distinction operates to the disability of a suspect class or impinges upon a fundamental right, thus triggering "strict scrutiny," the proper qustion is whether it bears a rational relationship to some legitimate state interest. *See San Antonio School District v. Rodriguez,* 411 US 1, 93 S Ct 1278, 36 L Ed 2d 16 (1973). Classifications which discriminate on the basis of wealth are not considered suspect. *San Antonio School District v. Rodriguez, supra.* The claimed right to an appointed attorney in cases other than those provided for in ORS 144.343(3) and OAR 254-70-015(6) is not a fundamental right. While a criminal defendant is entitled under the Equal Protection Clause to representation by appointed counsel upon a first appeal as of right (*Douglas v. California,* 372 US 353, 83 S Ct 814, 9 L Ed 2d 811 (1963); *Ross v. Moffitt,* 417 US 600, 94 S Ct 2437, 41 L Ed 2d 341 (1974)), the Supreme Court in *Gagnon v. Scarpelli, supra,* and *Morrissey v. Brewer,* 408 US 471, 92 S Ct 2593, 33 L Ed 2d 484 (1972), has made it clear that revocation proceedings are to be

distinguished from criminal proceedings. The court in *Gagnon* noted:

> "* * * The need for counsel at revocation hearings derives, not from the invariable attributes of those hearings, but rather from the peculiarities of particular cases." 411 US at 789.

Affirmed.